IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KAVIEN LEMAR WESLEY                                                    PLAINTIFF

v.            Civil No. 1:22-cv-01026-SOH-BAB

JAIL SUPERVISOR TIFFANCY KINLEY,
Ouachita County Detention Center (OCDC);
NURSE STEPHANIE HOLMES, Jail Nurse OCDC;
KEANE LIPPS A/K/A K. LIPPS; DR. JOSEPH
DELUCA, Jail Doctor, OCDC; and JAIL ADMINISTRATOR
CAMERON OWENS, OCDC                                       DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Kaiven Lemar Wesley ("Wesley"), filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. Wesley is currently incarcerated in the Miller County Detention Center. The events at issue in this lawsuit occurred while Wesley was incarcerated in the Ouachita County Detention Center ("OCDC"). Wesley maintains he was denied adequate medical care at the OCDC. Wesley has sued the Defendants in both their individual and official capacities.

Pending before the Court is Wesley's Motion For Summary Judgment (ECF No. 92). Defendants have responded (ECF Nos. 60-62 & 97-98).[1] The Honorable Susan O. Hickey, Chief United States District Judge, referred the case to the undersigned in accordance with 28 U.S.C. §

---

[1] Defendants have incorporated by reference their response to Wesley's prior Motion for Summary Judgment. (ECF No. 46). This Motion was filed before Plaintiff sought and was granted leave to file an Amended Complaint. (ECF No. 74). The Motion was denied as premature and Plaintiff advised he could refile after he filed his Amended Complaint. (ECF No. 74).

1

636(b)(1) and (3) for the purpose of making a Report and Recommendation on the pending Summary Judgment Motion.

## I. BACKGROUND

Wesley filed this case on May 4, 2022. (ECF No. 1). He was granted *in forma pauperis* status that same day. (ECF No. 3). On August 12, 2022, default was entered against Defendant Keane Lipps a/k/a K. Lipps. (ECF No. 26). On January 30, 2023, Wesley filed an Amended Complaint. (ECF No. 84). The Amended Complaint sets forth six separate claims. *Id.*

Claim One alleges that between February 19, 2022, and February 21, 2022, Wesley suffered from serious pain in his stomach and diarrhea. (ECF No. 84 at 4). He suffered from serious cramping and whenever he had a bowel movement there "was nothing but blood." *Id.* Wesley asserts that Jail Administrator Owens, Jail Supervisor Kinley, Jailer Lipps, and Nurse Holmes were aware of his serious condition and still did nothing. *Id.* at 5. Wesley alleges he suffered both physically and mentally prior to being taken to the hospital where he was diagnosed with anemia, a gastrointestinal bleed, and unspecified gastrointestinal hemorrhage. *Id.* Wesley states he spent five days in the hospital and had to be given three units of blood. *Id.* As to his official policy claim, Wesley alleges the OCDC policy provides that "necessary medical treatment will be made available to all inmates." *Id.* Additionally, he states medical issues are not subject to the grievance procedure. *Id.*

To support his Motion for Summary Judgment on this claim, Wesley submits the following documents:

- A request dated February 19, 2022, at 09:17:59 stating I need to see a Doctor ASAP "I[']m shitting out blood and my kidneys are burning." (ECF No. 92 at 20). Supervisor Kinley responded: "I will make contact with the nurse and see what she advises." *Id.*

2

- A request at 12:00:32 stating he needs to see the doctor ASAP as he is bleeding whenever he has a bowel movement and has lost a lot of blood.  *Id.* at 1.  At 13:02:34 Supervisor Kinley indicated she would contact the nurse.  *Id.*

- A request at 14:13:46 asking what the jail nurse said and noting he had lost a lot of blood and was getting weaker.  *Id.* at 15.  Supervisor Kinley noted she was still waiting for a response.  *Id.* at 15.

- A request at 14:55:22 in which Wesley stated he was losing blood and was weak.  *Id.* at 21.  With no doctor or nurse available on the weekend, he asked to be checked out ASAP or to be taken to the emergency room.  *Id.*  He further noted that he would show Supervisor Kinley that he had "blood coming out . . . when [he] shit[s]" so that he could get medical care.  *Id.*  Supervisor Kinley responded she was "[w]orking with medical to see what needs to be done."  *Id.*

- A request at 14:56:53 stating "Ms Tiffany my health is very important and serious."  *Id.* at 16.  In response, Supervisor Kinley noted:  "duplicate to previous response."  *Id.*

- A request at 15:39:14 stating I have "lost a lot of blood due to the fact Im shitting blood."  *Id.* at 17.  Supervisor Kinley responded:  "inmate just spoke with an officer about matter."  *Id.*

- A request at 20:31:31, asking if they had any luck getting transport.  *Id.* at 14.  At 22:04:57, Amanda Jones responded she was still working on it.  *Id.*

- A request dated February 20, 2023, at 07:57:20 in which Wesley stated he had been "shitting blood" for over 24 hours and awaiting transport to the emergency room.  *Id.* at 22.  He asked to speak to the day-shift lieutenant.  *Id.*  Supervisor Kinley responded:  "I will let them know when they are not on emergency traffic."  *Id.*

- A request at 08:20:33 stating he had not refused any medical care.  *Id.* at 23.  He was told by the night shift lieutenant he could "stay back here in B-pod or I can come up front to get transport to the emergency room."  *Id.*  He was told it would be morning before he was transported.  *Id.* Supervisor Kinley responded:  "duplicate."  *Id.*

- A request at 11:22:59 stating I need to go to the emergency room now.  *Id.* at 18.  "I've been bleeding now for over 24 hours and I[']m weak . . .  What do you want me to do so I can get help I need to go to the hospital please."  *Id.*  Supervisor Kinley responded:  "I do not have transport available right this minute."  *Id.*

- A request at 16:27:46, stating he had requested to see the jail lieutenant ten hours ago and asking if the jail lieutenant had been on emergency calls all day or if he had even been notified.  *Id.* at 19.  Supervisor Kinley responded:  "duplicate."  *Id.*

3

- A request at 17:48:02 stating he was in pain and needed to get to the emergency room to find out where all the blood was coming from. *Id.* at 24. He repeated he was given permission by the night shift lieutenant to stay in B-pod awaiting transport. Wesley denied refusing any medical treatment. *Id.* Night Supervisor Amanda Jones responded she would be down when she got the chance. *Id.*

- A discharge summary and other records from Ouachita County Medical Center indicating Wesley had been admitted on February 21, 2022, and discharged on February 24, 2022. *Id.* at 25-27. His primary discharge diagnosis is listed as acute anemia due to gastrointestinal blood loss. *Id.* at 25. Wesley was given 3 units of packed red blood cells which raised his hemoglobin from a low of 7.3 to 8.8 at discharge. *Id.* He underwent a EGD (esophagogastroduodenoscopy) and colonoscopy. *Id.* The EGD was normal. *Id.* There was no active bleeding in the colon. *Id.* Large clots were noted and it was remarked that he had a past history of diverticular bleed which might be the source of the current bleed. *Id.* Dr. Arnold believed Wesley needed to be transferred to Baptist Health as he was "likely still actively bleeding." *Id.*

- A discharge summary from Baptist Health in North Little Rock showing Wesley was admitted on February 24, 2022, and discharged on February 26, 2022. *Id.* at 28. His discharge diagnosis was acute lower GI bleed likely diverticular. *Id.*

Claim Two alleges that on September 8, 2021, Wesley was found "in a ball on the floor in serious pain and suffering from hernia; kidney; bladder problems and was still [urinating] blood." (ECF No. 84 at 6). Wesley alleges that Jailer Lipps and Supervisor Kinley put him in a wheelchair and took him to a holding cell. *Id.* Wesley indicates he was told he would be transferred to the emergency room. *Id.* Wesley says Nurse Holmes told him he was waiting for transport. *Id.* Wesley asserts the transfer never happened. *Id.* Wesley's official policy claim is the same as stated in Claim One. *Id.*

In support of his Motion for Summary Judgment on this claim, Wesley offers the following documentation:

- A report dated September 8, 2021, at 07:35 by Supervisor Kinley noting K. Lipps had called her to come to B-pod because Wesley was lying on the floor in pain. (ECF No. 92 at 31). Wesley advised Supervisor Kinley that he had been having "major pain since last night in his right lower abdominal region." *Id.* When asked if he had a prior medical condition that could be causing the pain, Wesley stated he had been told he had a hernia.

4

> *Id.* K. Lipps retrieved a wheelchair and Wesley was taken up front and put in a holding cell until the jail nurse could look at him. *Id.* At the time of the report, Supervisor Kinley noted she was waiting for the facility nurse to come on shift and evaluate Wesley. *Id.*

- A request dated September 10, 2021, at 11:53:55 in which Wesley stated he was supposed to be transported to the emergency room on September 8th. (ECF No. 92 at 29). He stated he was still in pain and urinating blood. *Id.* He indicated he had been on antibiotics and was about to run out. *Id.* He stated he had tried everything he was asked to; but he was still urinating blood. *Id.* Wesley asked when he would be seen by the doctor. *Id.* Someone, who's signature cannot be deciphered, wrote: "All records sent to USM [United States Marshal's] office. Nothing else to offer. Needs to see specialist." *Id.*

- A request at 12:00:11 stating he had been told he was going to be transported to the emergency room on the morning on September 9th and was never taken. *Id.* at 30. Wesley asked when the jail doctor would be there. *Id.* William Hightower responded that the nurse could let him know on Monday. *Id.*

Claim Three alleges that Wesley was seen by Dr. Joseph Deluca on January 7, 2022, and informed that his ears were 80% closed. (ECF No. 84 at 8). Wesley indicates Dr. Deluca directed Nurse Holmes to clean Wesley's ears. *Id.* However, according to Wesley, Nurse Holmes told him "that was not her job to do because she [doesn't] get paid to do that." *Id.* Wesley states he received no treatment. *Id.* Wesley suffered from headaches, ringing and popping of his ears; and he was unable to hear out of his right ear. *Id.* Wesley's official policy claim is the same as stated in Claim One. *Id.*

In support of his Motion for Summary Judgment, Wesley offers the following documentation:

- A request dated November 28, 2021, in which Wesley stated both his ears were hurting. (ECF No. 92 at 32). Someone hand wrote the following: "All: Tramadol. USM." *Id.*

- A request dated December 13, 2021, in which Wesley stated his ears were ringing, irritated and popping. *Id.* at 33. In response, someone, presumably the doctor, wrote that the nurse was to check Wesley's ears with an otoscope and irrigate if positive for a cerumen impaction (earwax blockage). *Id.*

- A request dated January 5, 2022, complaining that his blood pressure was high; and he had

    not eaten anything since yesterday. *Id.* at 34. Wesley complained he was in pain and suffering and had a lot of medical issues. *Id.* Wesley indicated the emergency room doctor had said he needed to be seen by a specialist for all his issues. *Id.* Finally, Wesley complained that his ears had been hurting for over two months and no one had seen him about the issue. *Id.* In response, someone wrote: "wants jail md to look @ his ears." *Id.*

- A January 7, 2022, note indicating Wesley was seen by Dr. DeLuca. *Id.* at 35. Dr. DeLuca noted Wesley suffered from chronic hematoma and had been seen by urology recently. *Id.* It was also noted that the USM had denied a CT. *Id.* With respect to Wesley's ears, a note was made that his right ear was completely impacted; his left ear was 80% impacted; and to irrigate his ears. *Id.*

Claim Four alleges that on July 22, 2022, Nurse Holmes refused to test him for COV*ID.* (ECF No. 84 at 9). The following afternoon Wesley had difficulty breathing and jail staff contacted Administrator Owens who had Wesley placed in a holding cell. *Id.* Wesley states he was told he would be going to the emergency room. *Id.* Wesley then tested positive for COVID. *Id.* Wesley maintains Supervisor Kinley refused to send him to the emergency room. *Id.* Wesley states he was in pain and suffering until finally on July 29, 2022, he was given medication. *Id.* Wesley asserts that another inmate was sent to the emergency room for an infusion; he recovered quickly from COVID; and did not suffer the way Wesley did. *Id. Id.* Wesley's official policy claim is the same as stated in Claim One. *Id.*

In support of his Motion for Summary Judgment on Claim Four, Wesley submits the following documents:

- An incident report dated July 23, 2022, stating that at 04:00 Wesley informed Officer Gill-Wesber that he was experiencing shortness of breath. (ECF No. 92 at 36). Supervisor Jones indicated she informed the nurse of Wesley's complaint. *Id.* The nurse stated Wesley might need to go to the emergency room. *Id.* Supervisor Jones updated Administrator Owens who suggested Wesley be brought to holding to be observed every 15-minutes until further action.

- An incident report stating Supervisor Kinley had administered a COVID test which was positive. *Id.* at 37. Supervisor Kinley noted Wesley began to demand to go to the

hospital but for the time being she had no transport officers available. *Id.* Supervisor Kinley offered Wesley Tylenol "as we have been directed to do by the facility nurse." *Id.* Supervisor Kinley said she saw no signs of obvious distress justifying a trip to the emergency room or the need to call an ambulance. *Id.*

- The same incident report with written instructions dated July 27, 2022, for Zithromax, Prednisone, Zyrtec, vitamins C and D, and zinc daily. *Id.* a 38. Note was also made to report if Wesley experienced worsening symptoms. *Id.* If Wesley experienced shortness of breath, he should be taken to the emergency room. *Id.* The signature is illegible. *Id.*

Claim Five alleges that on August 20, 2021, Dr. Deluca diagnosed Wesley with a hernia. (ECF No. 84 at 11). Despite it being very painful, Wesley states Dr. Deluca "never did anything about it." *Id.* Wesley asserts his suffering went on for over a year. *Id.* Wesley maintains that Dr. Deluca, Nurse Holmes, and Administrator Owens denied him treatment for the hernia. *Id.* Wesley's official policy claim is the same as stated in Claim One. *Id.*

In support of his Motion for Summary Judgment on Claim Five, Wesley submits the following documents:

- A request dated August 16, 2021, in which Wesley complained of an ongoing medical problem with pain in his bladder, kidney, and appendix area. (ECF No. 92 at 39). Wesley reported that the prior evening Officer Hightower called Nurse Holmes and she advised him to give Wesley three Ibuprofen and two Benadryl. *Id.* Wesley asked when he would be seen by the doctor because he was in pain. *Id.*

- On the same request form a handwritten note dated August 20, 2021, stating that Wesley had refused to urinate for evaluation. *Id.* He was to be given no additional treatment until he submitted to a urine test for a complete evaluation. *Id.*

- On the same request form there are handwritten notes indicating Wesley had a small abdominal hernia that was reducible. *Id.* Wesley was prescribed Tamsulosin 0.4 mg to be given twice a day indefinitely. *Id.* For diverticulitis, Westly was prescribed docusate 100 mg twice a day.[2] *Id.* Finally, note was made Wesley should be given a "boat mattress" if one was available. *Id.*

- A request form dated October 18, 2021, in which Wesley indicated he was having more

---

[2] No indication is given of the length of time Wesley should remain on this medication; nor was the prescription written for a specific number of pills. (ECF No. 92 at 39).

7

trouble urinating and his kidneys hurt. *Id.* at 40. He stated he needed to see a specialist for his kidney and bladder issues and added that his hernia was very painful. *Id.* Wesley complained that the socks he was able to obtain at the WCDC cut off his blood circulation and the bottom of his feet turned blue and were cold. *Id.* His legs were also swelling. *Id.* With all his medical problems and because he is a diabetic, Wesley stated he needed to see a doctor as soon as possible. *Id.* A handwritten note on the form states: "USM declined referral to urology & referral for hernia due to not enough supporting info." *Id.* The signature is indecipherable. *Id.*

- A request dated November 1, 2021, in which Wesley complained about having trouble urinating; his kidneys hurting; his painful hernia; and needing to see a specialist about his bladder. *Id.* at 41. Westley noted he was a diabetic; had high blood pressure; and had a "brain problem [resulting from] when [he] was shot in his head." *Id.* Wesley asserted he needed to be seen by a specialist. *Id.* In response, a handwritten note states: "Inmate was seen by Dr. J. Lewis 11/2/21." Once again, the signature is indecipherable.

- A request dated December 21, 2021, in which Wesley complained of having suffered serious pain over the weekend due to ongoing problems with his kidneys, bladder, hernia, ears, and head. *Id.* at 41. Wesley noted there was still blood in his urine. *Id.* A handwritten note states: "All appts & tests are currently on hold until Capt Owens has the meeting with Tim Greer—USM." *Id.* The signature is indecipherable. *Id.*

Claim Six alleges Administrator Owens has failed to train detention center employees how to deal with medical situations.[3] (ECF No. 84 at 12). Wesley maintains he was refused medical treatment because the USM would not pay the medical bill at the doctor's office. *Id.* As a result, Wesley states he has continued to suffer physically, emotionally, and mentally. *Id.* at 13. Wesley's official policy claim is the same as stated in Claim One. *Id.*

In support of Claim Six, Wesley offers the following documentation:

- A document dated June 17, 2021,[4] from UAMS (University of Arkansas for Medical Sciences) which stated Wesley's diverticular disease had deteriorated since he was last seen. (ECF No. 92 at 43). The notes indicate the physician was concerned Wesley might have IBS or IBD including Crohn's or ulcerative colitis. *Id.* It was stated that Wesley

---

[3] Wesley originally included United States Deputy Marshal Timothy Greer and Caroline Kastings, an employee of the United States Marshal Service, as Defendants. (ECF No. 84). However, they have been dismissed from this lawsuit. (ECF No. 99).

[4] According to the affidavit submitted by Jail Administrator Owens, Wesley was not booked into the OCDC until June 25, 2021. The two records from UAMS predate his incarceration.

would need further workup with GI including an EGD and colonoscopy. *Id.* Note was made that Wesley continued to have hematuria and had been seen by a urologist who ruled out "urethral/bladder cause to hematuria." *Id.* Wesley needed further evaluation by nephrology to rule out glomerulonephritis. *Id.* Finally, a note was made that Wesley could not be seen by C&C "due to outstanding balance" and the referral would be sent to "LR vs. Dr. Blankenship." *Id.*

- A second document from UAMS, on the same date, which indicates the visit was via telephone. *Id.* at 44. This document mentions Wesley's final problem was a complaint about his hernia. *Id.* They "discussed that if his hernia is ever unable to reduce that he needs to go to the ED immediately for evaluation for incarcerated hernia and possible surgical consult." *Id.*

- A medical submission form dated June 23, 2022, to the USMS by OCDC asking for approval for a nephrology consult. *Id.* at 45. The notes state: "Gross Hematuria- chronic, Urology ruled out urethral/bladder cause. Will need further evaluation by nephrology to rule out glomerulonephritis. Referred to Collum&Carney but will not see due to outstanding balance." *Id.*

In opposition, Defendants have submitted the affidavit of Administrator Owens. (ECF No. 61 at 1). Administrator Owens asserts that the Defendants have been diligent in providing Wesley medical treatment from the time he was booked in on June 25, 2021. *Id.* Owens then provides the following table:

| AFFIDAVIT EXHIBIT # | DATE | PROVIDER | CLINIC/HOSPITAL |
|---|---|---|---|
| 1 | 5/7/21 | Jessica Happ, LVN | Ouachita County Detention Center |
| 2 | 6/15/21 | Samuel Nix, NP | Wadley Regional Medical Center |
| 3 | 6/22/21 | Staff Nurse | Turnkey Health Clinic |
| 4 | 7/7/21 | William Dunn, MD | Ouachita County Medical Center |
| 5 | 9/2/21 | William Dunn, MD | Ouachita County Medical Center |

| | | | |
|---|---|---|---|
| 6 | 10/20/21 | Joseph Deluca, MD | Ouachita County Detention Center |
| 7 | 11/2/21 | Jonathan Lewis, MD | The Lewis Clinic |
| 8 | 12/1/21 | Seth Aulds Hollenbach, MD | CHI St. Vincent Urology |
| 9 | 12/6/21-12/9/21 | Naveen Patil | AR Department of Health |
| 10 | 12/13/21 | Joseph Deluca, MD | Ouachita County Medical Center |
| 11 | 1/3/22 | William Daniel, MD | Ouachita County Medical Center |
| 12 | 1/7/22 | Joseph Deluca, MD | Ouachita County Detention Center |
| 13 | 2/21/22 | John Henriksen, MD | Ouachita County Medical Center |
| 14 | 2/24/22-2/26/22 | William Wesley Thorpe, DO; Jonathan Clark Watson, MD | Baptist Health Medical Center |
| 15 | 3/21/22 | William Dunn, MD | Ouachita County Medical Center |
| 16 | 3/30/22 | Robert J. Amato, MD | UAMS–Little Rock |
| 17 | 4/19/22 | Jason T. Pickelman, MD | Collom & Carney Clinic |
| 18 | 5/6/22 | Robert J. Amato, MD | UAMS (telehealth visit) |
| 19 | 6/17/22 | Robert J. Amato, MD | UAMS (telehealth visit) |

| 20 | 7/28/22 | Stefanie Holmes, LPN | Ouachita County Detention Center |
| 21 | 8/1/22 | Stefanie Holmes, LPN | Ouachita County Detention Center |
| 22 | 8/4/22 | James Boehmke, MD | Texarkana Gastroenterology Consultants |

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson*, 477 U.S. at 249). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the

11

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendants clearly acted under color of state law. The sole question is whether the Constitution was violated.

**1. Individual Capacity Claims**

The Eighth Amendment's prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *See e.g., Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).[5] Although Wesley was a pretrial detainee and his claim is brought under the Fourteenth Amendment, the Eighth Circuit has continually applied the Eighth Amendment's deliberate indifference standard to claims brought by pretrial detainees. *See e.g., Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). To prevail on his claim, Wesley must prove that each Defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective

---

[5] In *Briesemeister v. Johnston,* 827 Fed. Appx. 615, 616 n.2 (8th Cir. 2020), the Eighth Circuit rejected the argument that the objective reasonableness standard which the Supreme Court adopted in *Kingsley v. Hendrickson,* 576 U.S. 389 (2015), in connection with excessive force claims brought by pretrial detainees under the Due Process Clause, had altered the standard applicable to denial of medical care claims brought by pretrial detainees.

component: '[Wesley] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Wesley must show he "had been diagnosed by a physician as requiring treatment" or had an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald,* 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted). The undisputed facts establish Wesley suffered and/or suffers from a number of serious medical conditions.

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

This subjective component requires Wesley to prove that each named Defendant had a "sufficiently culpable state of mind;" in other words, he or she actually knew of the substantial risk of serious harm and failed to respond reasonably to it. *Nelson v. Shuffman*, 603 F.3d 439, 446-47 (8th Cir. 2010). "Liability for damages for a federal constitutional tort is personal; so, each defendant's conduct must be independently assessed." *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006).

"Because [Wesley'] deliberate-indifference claim is based on a delay in medical treatment, we measure the objective seriousness of the deprivation . . . by reference to the effect of delay in

13

treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016)(cleaned up). "To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id.* at 1119-20 (cleaned up). Wesley has provided medical documentation that his medical conditions were deteriorating sufficiently that it was necessary for him to be seen by a variety of specialists including a urologist and nephrologist to obtain proper medical treatment. Thus, an issue of fact exists as to the detrimental effect of the delay.

The Court believes Wesley has submitted insufficient proof to establish his entitlement to judgment as a matter of law as against any of the named Defendants. Certainly, Wesley has established there are genuine issues of fact as to whether the Defendants were deliberately indifferent to his serious medical needs. The mere fact that Wesley has shown he was denied medical treatment while the jail officials requested approval from the USM for treatment certainly goes to the issue of Defendants' deliberate indifference. Regardless of their agreement with the USM, Wesley was in the OCDC's custody and jail personnel had a constitutional duty to provide Wesley with adequate medical care.

However, as previously discussed, the deliberate indifference standard imposes a significant evidentiary burden on plaintiffs. It requires more than evidence of negligence, or even gross negligence, and a prisoner's mere disagreement with the course of care is not a sufficient evidentiary basis to prove deliberate indifference. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). Instead, deliberate indifference "requires proof of a reckless disregard for a known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). Based on the summary judgment record, the Court simply cannot say that Wesley has met his burden of showing there are no genuine issues of

material fact in dispute. Wesley is not entitled to summary judgment on his individual capacity claims against the Defendants.

### 2. Official Capacity Claim

An official capacity claim is considered a claim against the employing governmental entity, here, Ouachita County. *Crawford v. Van Buren Cnty.*, 678 F.3d 666, 669 (8th Cir. 2012). "Section 1983 liability for a constitutional violation may attach to an entity if the violation resulted from (1) an 'official entity policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016)(citations omitted).

In his Amended Complaint (ECF No. 84) when Wesley was asked to describe the custom or practice that he believed caused the violation of his constitutional rights, he responded by merely stating OCDC policy required inmates to be given necessary medical treatment. He maintained OCDC officials were not following the policy. The failure to follow policy is insufficient to establish liability. *See e.g., Walton v. Dawson,* 752 F.3d 1109, 1122 (8th Cir. 2019)(failure to follow internal policies does not state a constitutional violation). However, Wesley has submitted documentation suggesting the OCDC officials have a practice of not providing medical treatment to federal detainees unless the USM gives prior approval. Based on the record before the Court, this is sufficient to establish a question of fact as to the official policy claim. Wesley, however, is not entitled to summary judgment on this claim.

### IV. CONCLUSION

For the reasons discussed above, the undersigned recommends that Wesley's Motion for Summary Judgment (ECF No. 92) be **DENIED.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of May 2023.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE